UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLEN AIKENS, *also known as*
ALLEN ATKINS,

     Petitioner,

v.

JAMES SCHIEBNER,

     Respondent.

Case No. 24-cv-12234

Honorable Robert J. White

---

**ORDER DENYING HABEAS PETITION (ECF No. 16)**

---

Petitioner Allen Aikens, also known as Allen Atkins, filed an amended petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his state criminal conviction. (ECF No. 16). A jury convicted Aikens of second-degree murder; Aikens is currently serving a sentence of 150 to 250 months' imprisonment.[1] In his petition, Aikens raised ineffective assistance of counsel claims based on the performances of his trial and appellate attorneys. (ECF No. 16, PageID.2887–95).

Aikens proceeds pro se. In addition to Aikens' petition, there are six motions pending on the docket. The motions, all filed by Aikens, include: (1) a motion for

---

[1]*See* <u>Allen Atkins</u>, MDOC Offender Tracking Information System (2026), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=742687.

federal evidentiary hearing, (ECF No. 17); (2) a motion for subpoena ad testificandum, (ECF No. 19); (3) a motion for production of documents, (ECF No. 20); (4) a motion for discovery and *Brady* material, (ECF No. 22); (5) a motion for appointment of counsel, (ECF No. 23); and (6) a motion to produce documents (ECF No. 30).  For the reasons that follow, the Court will deny the habeas petition and the pending motions.  The Court will also deny a certificate of appealability and leave to proceed in forma pauperis on appeal.

## I.     Background

Aikens was convicted of stabbing to death his former adoptive mother's daughter during an argument at the adoptive mother's home in Detroit, Michigan, in 2016.  The Michigan Court of Appeals described the relevant facts, which the Court will presume are correct, *see* 28 U.S.C. § 2254(e)(1), as follows:

> In July 2016, defendant was visiting his former adoptive mother, Emily Miller, for the first time in three years when a conflagration erupted between defendant and Miller's daughter, Dominique Conaway. The two struggled over a knife, and Conaway died after suffering multiple stab wounds. Defendant did not deny killing Conaway, but maintained that he did so in self-defense.

> At trial, defendant testified that Conaway, who was approximately 23 years older than he, tried to kill him on two occasions during his childhood—once when he was five years old, and again when he was nine years old. Defendant elaborated that, on his fifth birthday, Conaway "cooked food" for the occasion, and defendant was later taken to a hospital to have his stomach pumped because he had "suffered from food poisoning." When defendant was nine years old, he used a "vaporizer" for a medical condition and ended up "in a coma for a

week," and Miller explained to him that Conaway had "poured anti-freeze" into the vaporizer.

Defendant further testified that when he was 10 years old he "got took [sic] away" from Miller as the result of a "child abuse scandal that made nationwide news." According to Miller, defendant "went into the system" when he was 10 years old, and she confirmed that defendant was "removed" from her home by Child Protective Services. Miller stated that defendant returned to live with her when he was 14, and remained with her "[o]ff and on until he was twenty, [or] twenty-three [years old]."

*People v. Atkins*, No. 342467, 2020 WL 2095985, *1 (Mich. Ct. App. Apr. 30, 2020) (footnote omitted).

The case has a lengthy procedural history following Aikens' conviction. Aikens first filed an appeal as of right with the Michigan Court of Appeals for ineffective assistance of counsel. *Id.* at *2. The court denied Aikens relief and affirmed his conviction and sentence. *Id.* at *2–8. Aikens then applied for leave to appeal with the Michigan Supreme Court; the court denied the application in a standard order. *People v. Atkins*, 507 Mich. 898 (2021). Around this time, Aikens also filed his first petition for habeas relief in this Court, but subsequently requested it be dismissed. The Court granted that request and dismissed the petition without prejudice. *Aikens v. Horton*, No. 21-10945, 2021 WL 2786548, at *1–2 (E.D. Mich. June 1, 2021).

Afterwards, Aikens moved for relief from judgment from the trial court for lack of subject matter jurisdiction. (ECF No. 14-18, PageID.1431–36).

The Court denied the motion for lack of merit and for failure to show good cause and actual prejudice as required by Michigan Court Rule 6.508(D)(3). (ECF No. 14-19). Aikens next filed a delayed application for leave to appeal with the Michigan Court of Appeals; the Michigan Court of Appeals denied that application because it failed to establish that the trial court erred in denying the motion for relief from judgment. (ECF No. 14-22, PageID.1463). Undeterred, Aikens applied for leave to appeal that decision with the Michigan Supreme Court yet was denied again for his failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Atkins*, 986 N.W.2d 921 (Mich. Apr. 4, 2023).

Aikens did not stop there. He filed a second motion for relief from judgment with the state trial court raising claims of newly discovered evidence and police and prosecutorial misconduct. (ECF No. 14-20, PageID.1444). That motion was denied. (ECF No. 14-21). Aikens then filed his second federal habeas petition, which is presently before the Court. (ECF No. 1). The petition included claims raised on direct and collateral review in the state courts. (*Id.*). The Respondent answered the petition and argued it should be dismissed as untimely or otherwise denied for lack of procedural and substantive merit. (ECF No. 13, PageID.323–80). After filing his reply, however, Aikens moved to amend his habeas petition to remove unexhausted

4

claims and clerical errors and to provide a more legible pleading. (ECF No. 16). He filed his proposed amended petition alongside his motion. (*Id.* at PageID.2877–96). The Court allowed Aikens to amend his petition, (ECF No. 29), and the amended petition is now the operative petition. (ECF No. 16, PageID.2877–96).

Aikens asserted three separate claims in his amended petition. First, trial counsel provided ineffective assistance of counsel during jury selection by failing to properly object to the "unorthodox" voir dire process. (*Id.* at PageID.2887). Second, trial counsel ineffectively assisted Aikens by failing to move for a new trial when one of the jurors told the trial court that she was pressured by the other jurors into reaching a verdict and would have preferred to continue deliberations. (*Id.* at PageID.2890). Third, appellate counsel provided ineffective assistance of counsel by failing to make a record of meritorious issues during the state court evidentiary hearing and during the appeal as of right. (*Id.* at PageID.2893).

## II.   Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state convictions. To grant a habeas petition, the Court must find that the state

court adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of" clearly established federal law or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

"A state court's decision is 'contrary to' [] clearly established law if it 'applies a rule that contradicts the governing law set forth'" by the Supreme Court or "'confronts a set of facts that are materially indistinguishable from a'" Supreme Court decision yet arrives at a different result from that precedent. *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). Meanwhile, an "unreasonable application" of law means that the state court correctly identified the "'governing legal principle from [the Supreme] Court but unreasonably applie[d] that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). The unreasonable application standard also requires more than an "incorrect or erroneous" decision from the state court. *Wiggins*, 539 U.S. at 520. Instead, "[t]he state court's application must have been 'objectively unreasonable.'" *Id.* at 520–21 (quoting *Williams*, 529 U.S. at 409).

Overall, AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). To obtain

6

habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). That is, a federal court should overturn a state court decision "only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

In conducting habeas review, a federal court must presume that the state court's factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). "[T]he petitioner may rebut the presumption of correctness only with clear and convincing evidence." *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

## III.    Analysis

### A.    Effectiveness of Trial Counsel

Aikens argued that he is entitled to habeas relief for ineffective assistance of counsel at trial. (ECF No. 16, PageID.2878). First, Aikens' trial counsel failed to object to the state court's "unorthodox voir dire process," which resulted in an improperly vetted jury and no alternates. (*Id.* at PageID.2887). Second, trial counsel failed to move for a new trial after one of the jurors informed the court that other

jurors had intimidated her into reaching a verdict when she would have preferred to continue deliberations. (*Id.* at PageID.2890).

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To assert an ineffective assistance of counsel claim, the petitioner must show (1) "that counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687. A counsel performs deficiently when they make "errors so serious" that they no longer function as "the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Likewise, a defendant is prejudiced by deficient performance when the errors are "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689–90. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. In doing so, the Court must determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of

8

professionally competent assistance." *Id.*   Ultimately, the "question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 1.    Voir Dire

The Michigan Court of Appeals considered Aikens' ineffective assistance claim, as it relates to the jury voir dire, on direct appeal. *Atkins*, 2020 WL 2095985, at *2–3.  Aikens argued that his trial counsel was ineffective in failing to object to the trial court's unorthodox voir dire process.  That is, the trial court allegedly asked prospective jurors questions "not sufficiently probative to determine if they were impartial" and Aikens' defense counsel failed to fill in gaps left by the trial court's and prosecution's questions. *Id.* at *3.  But after reviewing the record, the court found that "the prosecuting attorney and the trial court extensively questioned [potential jurors] regarding their impartiality and availability." *Id.*  Thus, their questioning was adequate to uncover bias and the defense "had nothing to gain from posing duplicative questions." *Id.*  In addition, the fact that the judge brought up irrelevant information during voir dire did not undermine his extensive interrogation of jurors' potential biases. *Id.*  As a result, trial counsel's failure to object or ask more questions did not negatively impact Aikens. *Id.*

Aikens also argued that trial counsel was ineffective in failing to strike a juror for cause based on the juror's upcoming vacation schedule. *Id.*  The court, however,

found that Aikens' trial counsel acted reasonably. *Id.* The parties anticipated the trial to last four days; the juror noted that he was available the entire week; and the trial ultimately ended after three days. *Id.* Aikens could not explain how "the decision to retain the juror negatively impacted the trial or verdict," nor could the court discern such impact. *Id.*

Similarly, the court found Aikens' argument regarding the lack of alternates unavailing. *Id.* The trial court acted within its discretion to impanel a twelve-person jury with no alternates, despite the one juror's vacation plans. *Id.* Although Aikens argued that the jury likely felt pressured by the juror's time constraints and a "different result might have occurred had defense counsel objected" to having no alternates, the court found that argument as merely speculative and overall insufficient to support an ineffective assistance claim. *Id.*

This Court finds that the trial court's decision to deny habeas relief on Aikens' voir dire claim was neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. A criminal defendant has a constitutional right to an impartial and unbiased jury. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992) ("due process alone has long demanded that . . . the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment"). "'Among the most essential responsibilities of defense counsel is to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to identify and ferret

10

out jurors who are biased against the defense.'" *Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009) (quoting *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001)). Because "[a]n attorney's actions during *voir dire* are considered to be matters of trial strategy," courts accord counsel "particular deference when conducting *voir dire*." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* Trial courts also have broad discretion in conducting voir dire and their management of the process "is granted similar deference." *Holder*, 588 F.3d at 338–39.

Here, Aikens failed to establish that his attorney needed to object to trial counsel's process. First, the record shows that the trial court and the prosecutor asked pertinent questions about the jurors' jobs, families, residences, criminal history (perpetrator and victim), religious biases, police interaction, knowledge of the parties, and ability to serve for the anticipated duration of the trial. (ECF No. 14-10, PageID.582–748). So even if the trial court discussed irrelevant topics with the jury, (ECF No. 16, PageID.2888), it still gathered information relevant to assembling an impartial jury that the prosecution and defense could use.

Aikens also offered no examples of sufficiently probative questions that his counsel supposedly failed to ask. Without evidence of trial counsel's deficiencies,

11

Aikens cannot "overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689).  Likewise, defense counsel acted reasonably by not moving to strike the juror with a planned vacation for cause. The juror stated he would be able to serve the length of the anticipated trial (4) days and was available the entire week (5 days). (ECF No. 14-10, PageID.711). Considering the trial lasted three days only, Aikens suffered no apparent prejudice, nor did he offer evidence that the juror was unable to reach an impartial verdict.  As for defense counsel's failure to object to the lack of alternates, the Court finds that the trial court acted well within its discretion by impaneling a jury of twelve (when the maximum allowed is fourteen) for a four-day trial.

Overall, there is no evidence that the jurors were unable to reach an impartial verdict or were otherwise biased against Aikens.  Given that Aikens made only conclusory assertions about the impact of the trial court's and defense counsel's voir dire, the Court finds he is not entitled to habeas relief on this claim. *See Cross v. Stovall*, 238 Fed. App'x 32, 39–40 (6th Cir. 2007) (finding ineffective assistance claim "doomed by the fact [petitioner] makes nothing more than conclusory assertions about actual prejudice"); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (finding "merely conclusory" allegations insufficient to state ineffective assistance claim); *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("merely

conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim").

### 2.     Juror's Post-Conviction Complaint

Aikens also alleged that trial counsel was ineffective by (1) not requiring his presence at a post-verdict hearing and (2) not moving for a new trial when a juror informed the trial court, the day after the verdict, that she wanted to continue deliberations. (ECF No. 16, PageID.2890–91).  The Michigan Court of Appeals considered Aikens' claim on direct appeal and denied relief.  The court found that there was no apparent reason trial counsel "should have objected to defendant not being present during that hearing," given it was unclear "how defendant's absence resulted in any prejudice." *Atkins*, 2020 WL 2095985, at *4.  Likewise, "[t]rial counsel was not ineffective for not having sought a new trial on the basis of the juror's testimony." *Id.* at *5.  Although that juror expressed concerns with the alacrity of the verdict and other jurors' discredit of Aikens' testimony, she offered no "extraneous or outside errors" that affected the jury's deliberations. *Id.*  Instead, "[b]ecause only mistakes or misconduct of the sort that is inherent in the verdict were described . . . trial counsel would not likely have succeeded had he requested a new trial on this basis." *Id.*  Plus, defense counsel "had sound strategic reasons" for not pursuing a new trial in that Aikens avoided a conviction and sentence for first-

13

degree murder. *Id.* at *6. Defense counsel did not want to risk a harsher outcome with a new trial. *Id.*

The Court finds that the lack of Supreme Court precedent supports the Michigan Court of Appeals' decision and that the court did not unreasonably apply federal law or the facts. To start, the Supreme Court recognizes that a criminal defendant has a fundamental right to be personally present "at all critical stages of the trial." *Rushen v. Spain*, 464 U.S. 114, 117 (1983); *see also Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"). The privilege of presence is not guaranteed, however. *Stincer*, 482 U.S. at 745 (noting due process does not require defendant's presence when it would be useless). And violations of the right are subject to harmless error analysis. *Rushen*, 464 U.S. at 117 n.2; *see also Bourne v. Curtin*, 666 F.3d 411, 413 (6th Cir. 2012) ("violations of these rights are generally subject to harmless-error analysis") (citation omitted).

Here, Aikens neither cited, nor can the Court find, any Supreme Court authority holding that a criminal defendant has the right to be present at a post-verdict inquiry into potential juror misconduct or that such an inquiry is a critical stage of the proceedings. In similar contexts, the Supreme Court has explicitly declined to rule that a defendant has the right to be present. *See Marshall v. Rogers*,

14

569 U.S. 58, 64 (2013) (expressing "no view" on whether a post-trial, pre-appeal motion for a new trial is a critical stage of the prosecution); *see Coleman v. Bergh*, 804 F.3d 816, 819 (6th Cir. 2015) (citing *Marshall* and noting "the Supreme Court has never held that a hearing on a motion for a new trial is a critical stage of a criminal proceeding"); *Reid v. United States*, No. 18-5432, 2018 WL 11303655, at *2 (6th Cir. Aug. 28, 2018) (citing *Marshall* and *Coleman* for same proposition); *Rickman v. Bell*, No. 2:06-cv-15020, 2008 WL 3853324, at *4 (E.D. Mich. Aug. 18, 2008) ("The United States Supreme Court has not specifically determined whether a defendant has a right to be present at a post-sentencing hearing on a motion to withdraw a guilty plea."). As such, the state court's denial of relief is not contrary to clearly established precedent or an unreasonable application thereof.

And at least one court in this district has found that "[a] post-verdict inquiry by a judge into alleged juror misconduct is not a critical stage of proceedings" such that Sixth Amendment rights are invoked. *Harrington v. Davis*, No. 2:07-cv-13493, 2010 WL 1859991, at *6 (E.D. Mich. May 10, 2010). There, the court denied habeas relief to the petitioner on his claim that his right to counsel was violated. *Id.* So there is some (albeit non-binding) authority to suggest that Aikens would not have the right to be present at the post-verdict hearing in the first place. Plus, even if Aikens did have that right, the Court finds that trial counsel's failure to have Aikens appear is harmless error. The trial court's post-verdict inquiry concerned a purely legal

15

matter involving the jury's deliberations.  At that point, the inquiry did not bear on Aikens' guilt or innocence; he was already convicted.  As a result, Aikens' absence did not affect the fairness of the proceedings, nor can the Court discern any benefit to Aikens if present.  And Aikens did not establish how trial counsel's conduct ultimately prejudiced him, as he offered no example of how his absence detrimentally affected him.

Second, Aikens did not show that trial counsel was ineffective in not moving for a new trial based on the alleged jury misconduct.  As discussed, the Sixth Amendment guarantees a criminal defendant a fair trial by a panel of impartial jurors. *Morgan*, 504 U.S. at 727.  Courts presume that jurors are impartial. *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (referencing the "well-established presumption of juror impartiality").  The defendant "bears the burden of *proving* that the jury was biased." *United States v. Wheaton*, 517 F.3d 350, 362 (6th Cir. 2008).  But "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

"[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 216.  To receive a hearing, the defendant must raise a "colorable claim of extraneous influence." *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999).  "[A]n extraneous influence on a juror

16

is one derived from specific knowledge about or a relationship with either the parties or their witnesses." *United States v. Herndon*, 156 F.3d 629, 636 (6th Cir. 1998). Reviewing courts recognize the trial judge as being in the "best position to determine the nature of the alleged jury misconduct" and "appropriate remedies for any demonstrated misconduct." *United States v. Gaitan-Acevedo*, 148 F.3d 577, 590 (6th Cir. 1998) (citation omitted).

The admission of juror testimony to impeach a verdict is "flatly prohibited" unless defendant alleges an extraneous influence affected the jury. *Tanner v. United States*, 483 U.S. 107, 117 (1987); *see also* Fed. R. Evid. 606(b) ("During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations . . . "). The rationale for such a rule is that allegations of juror misconduct raised after the verdict "seriously disrupt the finality of the process" and undermine the jury's ability to engage in "full and frank discussion" and "willingness to return an unpopular verdict." *Tanner*, 483 U.S. at 120–21.

Here, trial counsel testified at the post-verdict hearing that (1) he did not believe the juror's post-verdict statements to the trial court revealed an external influence on the jury or juror misconduct and (2) that the second-degree murder verdict favored his client and a re-trial could result in a first-degree murder conviction and life sentence for Aikens. (ECF No. 14-17, PageID.1235–40). The

17

Court finds trial counsel's decision-making reasonable.  And, critically, Aikens did not allege any extraneous or external influence on the jury.  Rather, the juror's statement to the trial court revealed only that certain jurors had made up their minds and wanted to decide the case quickly, that she felt pressured to reach a verdict, that she felt defeated but agreed to a second-degree murder verdict, and that she wished the jury would have deliberated another day. (ECF No. 14-13, PageID.1147–52). The juror's statement reflects internal, not external, influences on the injury, goes to the heart of the jury's deliberations, and therefore do not warrant another hearing or other relief. *Tanner*, 483 U.S. at 117–22.[2]  As a result, trial counsel had no basis to move for a new trial.  The Court will not deem trial counsel ineffective for refusing to make a meritless motion. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) ("The failure to raise a meritless claim does not constitute ineffective assistance of counsel.").  Aikens is not entitled to habeas relief on this claim.

B.      **Effectiveness of Appellate Counsel**

Aikens also asserted that he was entitled to habeas relief because his appellate counsel was ineffective at his evidentiary hearing on his ineffective assistance of trial counsel claim and during his direct appeal. (ECF No. 16, PageID.2893).  Aikens

---

[2] The juror who testified indicated that she wanted to continue deliberations the next day so that she could go home and research on the internet claims Aikens had made at trial about his childhood. (ECF No. 14-13, PageID.1149–51).  If that juror or any other juror engaged in outside research, they likely would have introduced an extraneous influence into their deliberations resulting in jury misconduct.

alleged that at his evidentiary hearing, his appellate counsel failed to take adequate witness testimony from trial counsel and call necessary witnesses. (*Id.* at PageID.2893–95).  In addition, appellate counsel did not present worthwhile issues on appeal. (*Id.*).

The right to the effective assistance of counsel includes the right to effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  But a criminal defendant does not have a "constitutional right to compel appointed counsel to press nonfrivolous points requested by the [defendant], if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–752). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome."  *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citation omitted).

The Michigan Court of Appeals denied Aikens relief on his ineffective assistance of appellate counsel claim.  The court found that Aikens did not

19

"overcome the strong presumption that appellate counsel employed a sound strategy" in her choice of witnesses to call. *Atkins*, 2020 WL 2095985, at *6.  That is, Aikens did not identify the substance of what the other witnesses he wanted to call would have testified about, nor did he elaborate on why the examination of trial counsel was deficient. *Id.*  Similarly, Aikens did not show that appellate counsel erroneously excluded additional challenges to the trial court's performance in her argument. *Id.* at *7.

Again, the Court finds that the Michigan Court of Appeals' decision comports with Supreme Court precedent and that the court did not unreasonably apply federal law or the facts.  Aikens offered no evidence that appellate counsel's strategic decisions were unreasonable or that they prejudiced him.  He raised almost nothing the Michigan Court of Appeals did not already address as it relates to what more counsel could have done to benefit his appeal. [3]  Aikens also presented no affidavits from individuals who he believes should have testified.  Overall, Aikens failed to establish that appellate counsel was ineffective, and habeas relief is not warranted

---

[3] Aikens indicated in his petition that he believed appellate counsel should have called all eleven jurors to testify at his evidentiary hearing. (ECF No. 16, PageID.2894–95).  Aikens did not raise this issue in his direct appeal, so the Michigan Court of Appeals did not have an opportunity to decide the issue.  The Court will therefore consider the claim as procedurally defaulted, considering that Aikens could have raised it on direct appeal. *See Gray v. Netherland*, 518 U.S. 152, 162 (1996) (preventing federal habeas corpus review of defaulted claim "unless the petitioner can demonstrate cause and prejudice for the default").

on this claim.  For the reasons stated, then, the Court finds that Aikens is not entitled to federal habeas relief on any of his claims.  The Court will deny and dismiss with prejudice the habeas petition and will deny Aikens' other pending motions as moot.

## C.    Certificate of Appealability

Before Aikens can appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability is warranted only if a habeas petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  Aikens made no such showing.  Accordingly, the Court will deny a certificate of appealability.

Lastly, the Court concludes that an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a).  Accordingly, the Court will deny leave to proceed in forma pauperis on appeal.  The case is closed.

21

* * *

For the reasons given, the Court **ORDERS** that the amended petition for writ of habeas corpus (ECF No. 16) is **DENIED**.

The Court **FURTHER ORDERS** that Aikens' pending motions (ECF No. 17; ECF No. 19; ECF No. 20; ECF No. 22; ECF No. 23; ECF No. 30) are **DENIED AS MOOT**.

The Court **FURTHER ORDERS** that a certificate of appealability and permission to appeal in forma pauperis are **DENIED**.


Dated: April 6, 2026                              s/Robert J. White
                                                  Robert J. White
                                                  United States District Judge